SOUTHERN PAC. CO. v. BOARD OF R. R. COM'RS et al. (UNITED STATES, Intervener).

(Circuit Court, N. D. California. July 7, 1899.)

COSTS—AMENDMENT OF DECREE—ESTOPPEL.

　　Where a state railroad commission repealed resolutions it had previously adopted relating to freight rates, for the declared purpose of removing the cause of litigation then pending commenced by a railroad company to enjoin the reduction of rates contemplated by such resolutions, and asks that the suit be dismissed without costs to either party, which is done on motion of the complainant, the commission is estopped to ask an amendment of the decree so as to allow it costs as the successful party, on the ground that the resolutions repealed were not in fact the subject of the controversy, but were merely preliminary to subsequent action taken by the board, which was not repealed; nor will the decree be modified to allow costs to the complainant which were not asked for in its motion, no claim of mistake or inadvertence being made.

On motions by both respondents and complainant to modify decree by awarding costs to the parties, respectively.

W. F. Herrin and E. S. Pillsbury, for complainant.

Tirey L. Ford, Atty. Gen., George A. Sturtevant, Dep. Atty. Gen., and R. Y. Hayne, for respondents.

Marshall B. Woodworth, Asst. U. S. Atty.

MORROW, J. (orally).   On the 8th day of May, 1889, the attorney general of the state and special counsel for the respondent the board of railroad commissioners of this state made a motion for the dismissal of this case, upon each party to the action paying its own costs incurred in the case.   The motion was based upon certain resolutions adopted by the respondent board on the 24th day of April, 1899, whereby certain previous resolutions adopted by the board on the 12th and 13th days of September, 1895, relating to freight and grain rates on complainant's system of railroads in California, were rescinded, annulled, vacated, set aside, and repealed. It was recited in the resolutions of April 24, 1899, that the respondent board deemed it expedient, and for the best interests of the people of the state, that said litigation be not further maintained or carried on, but that the same be discontinued; and, the board being advised and of the opinion that the best and only method of stopping said litigation was by removing the cause of it, it was therefore resolved that the resolutions of September 12 and 13, 1895, should be repealed.   In other words, the respondent the board of railroad commissioners came into this court and asked for a dismissal of this case, upon the recital that it had repealed the resolutions relating to freight charges which had led to the institution of the suit.   The court denied the motion as then made, because there were certain recitals contained in those resolutions which it appeared were not in conformity with the record in the case.   It was also suggested by the court at that time that this motion, as the case then stood, should properly come from the complainant in the action.   Upon this suggestion of the court, complainant's counsel made a motion for the dismissal of the cause on the 19th day of May, 1899.   This motion was accompanied by a copy of the proceedings of the respondent board, as set forth in the motion made theretofore by its counsel, as to the repeal of the resolutions adopted by it in September, 1895.   Upon that motion of complainant, a decree was entered by the court that the cause be dismissed.   The decree was silent as to costs.   The complainant did not ask for such a decree, presumably for the reason that the motion was made on the proceedings had by the respondent board, and upon the previous motion made by the attorney general, specifically providing that each party should pay its own costs incurred.   Thereafter, on the 24th day of May, 1899, the attorney general of the state, and the special counsel representing the respondent board, filed a motion to so amend the decree as to award to the respondent board, as against the complainant, all the costs by it incurred in the action. On the same day the complainant filed a similar motion.

The question before the court now is as to whether the decree so made by the court should be amended so as to provide for the payment of costs, and, if so, which party should be required to pay these costs.   The respondent board in this case supports its motion for an amendment of the decree providing for the allowance of costs to it upon the ground that it has been successful in this suit.   This claim is based upon the contention that the resolutions adopted by the respondent board on September 12 and 13, 1895, declaring a

proposed percentage of reduction, were merely preliminary to a re-
duction of freight charges upon the lines of the Southern Pacific
Railroad, and that effective action of the board was not taken until
September 17, 1895, when a schedule of rates was adopted by the
board, and that what the board did on the 24th day of April, 1899,
was to repeal these preliminary resolutions adopted by the railroad
commission on September 12 and 13, 1895, while the schedule of rates
adopted on September 17, 1895, was not disturbed; that the real
action of the board of railroad commissioners was contained in the
resolution of September 17, 1895, relating to the schedule of rates;
and that the preliminary resolutions of the 12th and 13th of Sep-
tember, 1895, declaring the percentage of reduction, were in effect
harmless. This proposition is remarkable, in view of the record I
find in this case. The controversy in this court appears to have cov-
ered this whole question as to the scope of the original resolutions
and their relation to the schedule of rates. The relation of these
resolutions of September 13th and 14th to the schedule of rates
adopted on September 17th appears to have been fully considered
by the court, and, upon the decision of the motion for injunction,
Judge McKenna pointed out, if not by express language, by impli-
cation, that it was the province of the court to arrest the uplifted
arm before the blow should be struck. This was the theory of the
interposition of the court with respect to the 8 per centum resolution
relating to grain rates, after the threatened action of the respond-
ent board when it adopted its resolution on the 12th and 13th of
September, 1895, and before the schedule of rates had been put in
operation. Judge McKenna indicated in his opinion that the time
for the court to act in such a matter was after the threat, and be-
fore the blow fell; that, if the complainant had waited until after
the schedule of rates had been put in operation, then some other
action would have been necessary. With respect to the 25 per cen-
tum resolution, it appeared that the complainant had been prema-
ture in its application for an injunction, because the railroad com-
missioners had not yet reached the point of action where the court
could properly arrest the proceedings of the board. Referring to this
resolution, Judge McKenna quoted from the argument of Judge
Hayne as follows:

"They say [the commission] that they do not consider it binding, and are not
going to do anything without further consideration; which, of course, may·lead
to very different results. The service, if it is to be made, has to be made by
their order, by their authority, and they have not yet even made up ·the sched-
ule which is to be served. They come here, high officers of state, and swear
they are not going to take the action without a further full, free, and fair in-
vestigation."

· Judge McKenna then said:

"I am disposed to accept this as true and sincere. Indeed, I do not know how
not to do so, regarding them, as they must be regarded, as truthful; nor do
I care to risk the slightest embarrassment to them as officers in any proper
investigation of the complainant, or any of its constituent roads, the results
of which cannot be put into force, even if it was desired to, except in a direct
and open way, and the detriment of which, if any, can be arrested before it
fall." Southern Pac. Co. v. Board of Railroad Com'rs, 78 Fed. 236, 248.

The respondents' contention that there was no effective action in the resolutions of September 12th and 13th is clearly contrary to what the court determined, as well as contrary to the argument of counsel. The whole case, from the beginning to the end, outlines a procedure in a court of equity, on the part of the complainant, to arrest the action of the respondents before their action should be beyond the reach of the court. The resolutions of the board of September 13th and 14th were therefore effective as a declaration as to the purpose of the board with respect to the reduction of the grain rates. But if it be said that these preliminary resolutions were ineffective and harmless, and that the real assault was in this resolution of September 17, 1895, which latter resolution has not been disturbed by the board, then, in my judgment, upon that theory of the proceedings, the respondent board is estopped to make any such claim. They will not be permitted, after all this controversy, to say that the real conflict and the real action of the board were involved in this resolution of September 17, 1895, and that this resolution still remains as evidence that the respondents have been successful in this suit. It is not for this court, upon a motion of this character, to determine who has been successful in a suit. The decree or judgment speaks for itself upon such a question, but, when a court is called upon to modify a decree, it will not be misled by the mere form of the proceedings which have brought the case to a conclusion. A court of equity is never to be deceived by mere form, nor will it allow parties to come into court one day contending for supposed rights upon one theory, and the next day shift their position, and say there is no controversy upon that proposition at all, but it is somewhere else, and with respect to questions not before considered.

In my opinion, therefore, the respondent board is estopped to say now that there was nothing in the preliminary resolutions, and that they were passed for no purpose or by inadvertence. The attorney general suggested, by way of illustration, that the preliminary resolutions, in their relation to the resolution of September 17th, were of the same character as where a legislature composed of two houses passes a bill in each house, and both bills become laws by the action of the houses at different dates, the two bills being identical, and afterwards, upon examination, the two laws are found upon the statute book and to be identical, and the legislature then repeals one of them as useless and as a mere incumbrance on the books. The court cannot look at these resolutions in that light. I do not say what the court might have determined with respect to these resolutions when the cause was still in controversy and under consideration. But now that it is over, and the respondents have, by solemn resolution, declared that their purpose on April 24th of this year was to remove the cause of complaint, they cannot now claim that there was no cause of complaint, or, if there was, that they did not intend to remove it. They cannot in one breath say that, being advised and of the opinion that the best and only method of stopping the litigation was to remove the cause thereof, and to that end they will repeal certain resolutions, and

in another say that they did not remove anything by the repealing resolution, or that there was nothing in fact to remove. In any event, respondents cannot recover costs upon any such theory of the proceedings of the board of railroad commissioners.

The complainant, in making its motion to dismiss, made the resolutions of the respondent board of April 24, 1899, a part of the proceedings. In effect it said: "The board of railroad commissioners has asked to have this case dismissed because the resolutions of September 12 and 13, 1895,—the cause of the litigation,—have been repealed. The court has said that this motion ought to come from the complainant. We accept the suggestion, and we make the motion. We propose to dismiss this suit. In the resolution it was said that each party should pay its costs. We have accepted that suggestion, and we propose to dismiss it, and say nothing about the costs." Thereupon the cause was dismissed. Under these circumstances, the court is unable to find anything in this record to justify a modification of the decree, and an award of costs to the respondents. The motion of the respondent board will therefore be denied.

The complainant has also made a motion to have costs awarded to it. That motion was noticed after the respondents had given notice of its motion. The complainant appears to have acted upon the theory that, if the case was to be reopened and the matter of costs considered, it was as much entitled to costs as the respondents. That is the probable motive that was behind this motion on the part of complainant. The complainant has, however, urged it on the ground that it appears from the record to be entitled to costs, and has cited a great many authorities which would seem to justify the claim. But the court is not in a position to follow the rules as declared in the cases cited. The decree was entered without costs upon the motion of complainant. There is nothing to show that there was any mistake or inadvertence or oversight on the part of the complainant in making this motion. As I have already indicated, the complainant knew what it was doing when it dismissed the case. It did so upon the faith of the original motion of the attorney general that each party was to pay its own costs. I shall therefore be compelled, under these circumstances, to deny the complainant's motion for costs. The decree will stand as it is, without modification, and the motions will be denied.

Mr. Sturtevant: I ask that an exception be allowed the respondents to that part of your honor's decision denying the respondents' motion to have their costs taxed against the complainant.

Mr. Pillsbury: That being the case, we reserve an exception to your honor's order denying our motion.